COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Elder and Annunziata
Argued at Richmond, Virginia


JAMES F. SCOTT

v.    Record No. 0461-98-2

JEAN HALL RUTHERFOORD                        OPINION BY
                                    JUDGE ROSEMARIE ANNUNZIATA
JAMES F. SCOTT                              JULY 6, 1999

v.    Record No. 1010-98-2

JEAN HALL RUTHERFOORD


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                 Dixon L. Foster, Judge Designate

            Sanford K. Ain (James P. Head; R. Craig
            Wood; James M. Johnson; Sherman, Meehan,
            Curtin & Ain; McGuire, Woods, Battle &
            Boothe, on briefs), for appellant.

            John K. Taggart, III (Patricia D. McGraw;
            Rachel L. Rust; Tremblay & Smith, on brief),
            for appellee.


     In these appeals, James F. Scott ("husband") contends the

circuit court judge erred by:  1) amending nunc pro tunc a final

order more than twenty-one days after its entry; 2) exercising

jurisdiction in a matter involving custody and visitation in

violation of the Uniform Child Custody Jurisdiction Act

("UCCJA"); 3) exercising jurisdiction in a matter involving

custody and visitation in violation of the Federal Parental

Kidnapping Prevention Act ("PKPA"); 4) failing to recuse

himself; and 5) finding husband in contempt for failing to pay an award of attorney's fees.  For the reasons that follow, we affirm the rulings of the circuit court.

I.

BACKGROUND

Husband and Jean Hall Rutherfoord ("wife") were married in 1980 and divorced in 1986 by the Circuit Court of Albemarle County ("the circuit court").  Until 1995, the parties had joint custody of their two children, William Scott and Meredith Scott, born March 29, 1981 and March 23, 1983, respectively.

In August 1995, wife, together with the parties' children, moved from Virginia to the District of Columbia.  Thereafter, the parties engaged in protracted litigation before the circuit court over matters relating to custody, visitation, and support. Wife petitioned for sole custody, which the court granted on a date undisclosed by the record.  In June 1996, appellant purchased a house in the District of Columbia in order to facilitate visitation with his children.

On November 12, 1996, the circuit court entered an order ("the November order") which gave "continued" sole custody of the children to wife.  The order also provided husband visitation with each child, setting out a detailed schedule that permitted visitation from 9:00 a.m. to 6:00 p.m. on specified days, varying from month to month, until September 1997.  The order provided no visitation to husband with either child after

September 28, 1997. In closing, the order provided, "nothing further to be done in this cause, the same is hereby ORDERED removed from the docket." The order was signed by counsel for both parties, by the children's guardian ad litem, and by the trial judge.

In April 1997, husband filed suit in the Superior Court for the District of Columbia, allegedly to enforce the circuit court's November order. Husband contended wife was actively interfering with the visitation schedule provided by the November order. Wife responded that husband was attempting to relitigate issues adjudicated in the circuit court. Wife cited husband's prayer for relief before the Superior Court for the District of Columbia, which asked the court, inter alia, to award him joint custody of his children, to establish weekly overnight visits with the children and substantial visitation during school breaks and summer vacations, and to appoint an independent mental health professional to evaluate the situation and advise the court as to the best interests of the children.

On May 30, 1997, wife moved the circuit court to strike the language in the November order removing the case from the court's docket and to reopen the case for the purpose of reviewing husband's visitation rights. During a telephonic hearing on June 5, 1997, husband objected to wife's motion to reopen, arguing: 1) the court lost jurisdiction over the case when the November order became final twenty-one days after its

entry, and 2) jurisdiction over the case rested in the District of Columbia where the parties and their children resided.

The court disagreed, stating at the hearing that the November order was not intended to be a final order. The court recalled that the parties agreed at the time of the November order that the issue of visitation "was to come back up again after a year," the parties indicating that they wanted to get out of court and "see how [they got] along." The court noted that, under the circumstances of the case, a permanent visitation schedule could not be established at the time it entered the November order and that "we said something to the effect that it would run for one year. We had to be so precise about every particular part, every holiday and every other time. But there's no way that we could have done that the next three or four years at the time, so that was the reason that we were going to bring the matter back up again, maybe to modify it for a little more . . . ."

On July 18, 1997, the court entered an order reopening the case and placing it upon the active docket. In the same order, the court also amended its November order nunc pro tunc by deleting the language: "And nothing further remaining to be done in this cause, the same is hereby ORDERED removed from the docket."

On July 22, 1997, the Superior Court for the District of Columbia dismissed husband's suit, finding Virginia retained

jurisdiction over the issues raised.  In its order dismissing the case, the Superior Court stated that Virginia was the more appropriate forum to determine the custody issues, noting

> [t]he issue is not simply whether the District of Columbia may assume jurisdiction, but whether it is in the best interest of the parties and the children for this forum to be utilized in light of the November 1996 Virginia Circuit Court's custodial order and its most recent June 5, 1997, telephonic hearing.  Virginia already has a body of information, which this jurisdiction does not.  Thus, it would appear that Virginia has continuing jurisdiction in this case.

On October 7, 1997, the circuit court heard argument on husband's motion to dismiss wife's request to reinstate the case.  Husband contended the court did not have subject matter jurisdiction because the parties were residents of the District of Columbia and, under the PKPA and UCCJA, only the District of Columbia had jurisdiction.  The court denied husband's motion, stating it "had the authority to enter a <u>nunc</u> <u>pro</u> <u>tunc</u> order" and that it "should retain jurisdiction until we have another hearing."  On March 30, 1998, the circuit court held a scheduled status hearing and entered a final order in this case.

## II.

### AMENDMENT OF THE NOVEMBER ORDER <u>NUNC</u> <u>PRO</u> <u>TUNC</u>

Husband contends the circuit court erred by amending the November order <u>nunc</u> <u>pro</u> <u>tunc</u> more than twenty-one days after its entry.  Husband further contends the court, having removed this

case from its docket by the terms of the November order, lacked jurisdiction to reopen the case and reinstate it on the active docket by order of July 18, 1997.  We disagree.

Under settled law, the divorce court generally has continuing jurisdiction to revise or alter its decree concerning the custody and maintenance of minor children.  See Code § 20-108; Lutes v. Alexander, 14 Va. App. 1075, 1083, 421 S.E.2d 857, 862 (1992).  Code § 20-108 provides in relevant part as follows:

> The court may, from time to time after decreeing as [to the custody or visitation of minor children], on petition of either of the parents, or on its own motion or upon petition of any probation officer or superintendent of public welfare, . . . revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require.

The court's authority to alter a previous decree and enter a new decree "as the circumstances of the parents and the benefit of the children may require" is unaffected by the court's prior removal of the case from its active docket.  See Code § 20-108. Although the court unnecessarily stated that it was deleting nunc pro tunc the language of the November order that removed the case from its docket, the court had the authority under Code § 20-108 to conduct further hearings and enter a new decree

concerning the care, custody, and maintenance of the parties' minor children.[1]

Accordingly, the trial court was not revising its order nunc pro tunc, despite its language to that effect and, therefore, that issue is not before us.

### III.

### ALLEGED VIOLATION OF UNIFORM CHILD CUSTODY JURISDICTION ACT

Husband next contends the circuit court violated the UCCJA by continuing to exercise jurisdiction in this case after both parties and their children had moved to the District of Columbia.

Under the UCCJA, a court having competence to decide child custody matters has jurisdiction to modify a child custody determination if:

> 1. This Commonwealth (i) is the home state of the child at the time of the commencement of the proceeding, or (ii) had been the child's home state within six months before the commencement of the proceeding . . . ; or
>
> 2. It is in the best interest of the child that a court of this Commonwealth assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth, and (ii) there is available in this Commonwealth substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

---

[1] The court's jurisdiction under Code § 20-108, however, is further subject to the requirements of the UCCJA and PKPA, which we address below.

3. The child is physically present in this Commonwealth and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

4. (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision 1, 2, or 3 of this subsection, or another state has declined to exercise jurisdiction on the ground that this Commonwealth is a more appropriate forum to determine the custody of the child, and (ii) it is in the best interests of the child that this court assume jurisdiction.

Code § 20-126(A).

Husband contends that none of the four above-referenced circumstances existed in this case to confer jurisdiction upon the circuit court once it had entered its November order. We disagree and find that the court properly exercised jurisdiction under Code § 20-126(A)(2) and (4).

The Virginia Supreme Court stated in <u>Middleton v. Middleton</u> that, like the Model Act upon which it was based, the Virginia UCCJA was

enacted to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; to promote cooperation with courts of other states so that a custody decree is rendered in a state which can best decide the issue in the interest of the child; to assure that litigation over the custody of a child ordinarily occurs in the state that is most closely connected with the child and his family and where significant evidence concerning his case, protection, training

> and personal relationships is most readily available; to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; to discourage continuing controversies over child custody; to deter abductions and other unilateral removals of children undertaken to obtain custody awards; to facilitate the enforcement of foreign custody orders and to avoid relitigating foreign custody decisions in this state so far as possible; and to promote the exchange of information and other forms of mutual assistance between courts of this state and those of other states concerned with the same child.

227 Va. 82, 93, 314 S.E.2d 362, 367 (1984).

The record plainly reveals the Superior Court for the District of Columbia declined to exercise jurisdiction over this case on the ground that Virginia "has continuing jurisdiction." In doing so, the Superior Court considered whether its exercise of jurisdiction would be in the best interests of the parties' children "in light of the [circuit court's] November 1996 . . . custodial order and its most recent June 5, 1997, telephonic hearing," in which the circuit court clarified that it intended to revisit the issue of visitation after the schedule established by the November order expired. The Superior Court also cited the substantial body of evidence the circuit court had accumulated in adjudicating the issues of custody and visitation.

We accordingly find that the circuit court properly modified the November order pursuant to Code § 20-126(A)(4).

Under this provision, a Virginia court may exercise jurisdiction when another state has declined to do so and its exercise of jurisdiction is in the best interests of the children at issue. It is undisputed that the circuit court had jurisdiction over the parties' custody proceeding following wife's move to the District of Columbia in August 1995. As we earlier determined, under Code § 20-108 the circuit court retained continuing jurisdiction to amend its decree upon the entry of the November order. Subsequently, the Superior Court for the District of Columbia declined jurisdiction, finding Virginia was the more appropriate forum, that Virginia's jurisdiction was continuing, and that it was in the best interest of the children to have the matter adjudicated in Virginia. Finally, we note that the Superior Court's decision to decline exercising jurisdiction over this matter is consistent with one of the purposes of the UCCJA, which seeks to avoid the relitigation of foreign custody decisions. As reflected by the record, husband sought to raise in his pleading before the Superior Court issues determined approximately five months earlier by the Virginia circuit court, including the custody of the children and the visitation to which husband was entitled.

We also find no merit in husband's argument that, in the absence of continuing jurisdiction in Virginia, the circuit court cannot exercise jurisdiction based solely on the Superior Court's refusal to assume jurisdiction on forum non conveniens

grounds.  The Commentary to § 6 of the Model UCCJA, promulgated by the National Conference of Commissioners on Uniform State Laws and codified in Virginia at Code § 20-129, makes clear that, even if Virginia lacked continuing jurisdiction, it would not be improper for one of its courts to adjudicate a matter if it constituted the most convenient forum.

> When the courts of more than one state have jurisdiction [under Code § 20-126] . . . , priority in time determines which court will proceed with the action, but the application of the inconvenient forum principle of [Code § 20-130] may result in the handling of the case by the other court.
> While jurisdiction need not be yielded . . . if the other court would not have jurisdiction under the criteria of the Act, the policy against simultaneous custody proceedings is so strong that it might in a particular circumstance be appropriate to leave the case to the other court even under such circumstances.

Unif. Child Custody Jurisdiction Act § 6, 9 U.L.A. 219, commentary at 220 (1988) (emphasis added).

Finally, we find that the circuit court's exercise of jurisdiction was proper under Code § 20-126(A)(2), which permits the court to modify its November order based on the significant connection husband and the children maintain with the Commonwealth and on the presence of substantial evidence pertaining to the children's present and future personal relationships.  Upon wife's move to the District of Columbia in August 1995, the parties engaged in proceedings concerning the custody and visitation of their children for approximately

fifteen months before the circuit court's entry of the November order establishing a temporary visitation schedule. During these proceedings in which the court held numerous hearings, heard testimony from both parties, and spoke with the children, a significant body of evidence was developed for the court's consideration. The children's guardian ad litem, a resident of Virginia, represented the children throughout the proceedings. Furthermore, notwithstanding husband's purchase of a house and his purported residency in the District of Columbia, the record also reveals that husband continued to own a residence and business in Virginia. In short, the record shows that the children and husband "have a significant connection with this Commonwealth" and that "there is available in this Commonwealth substantial evidence concerning [their] present or future care, protection, training, and personal relationships." Code § 20-126(A)(2). Thus, the circuit court's exercise of jurisdiction was not improper under the UCCJA.

IV.

ALLEGED VIOLATION OF THE PARENTAL KIDNAPPING PREVENTION ACT

The husband further contends that the circuit court's exercise of jurisdiction violated the PKPA. See 28 U.S.C. § 1738A. We find the mandates of the PKPA have no bearing on the issues raised in this case.

The PKPA was enacted in support of the same goals and policies that underlie the UCCJA. See Thompson v. Thompson, 484

U.S. 174, 177 (1988) ("[O]ne of the chief purposes of the PKPA is to 'avoid jurisdictional competition and conflict between State courts.'" (quoting Pub. L. 96-611, 94 Stat. 3569, § 7(c)(5), note following 28 U.S.C. § 1738A)). However, for the purposes of this case, one important distinction exists. Unlike the UCCJA, which attempts to avoid the exercise of jurisdiction by multiple states over a single custody matter by providing a forum with jurisdiction to decide the case, the PKPA "only addresses whether another state's order is entitled to full faith and credit." Megan Clark, A Proposal to End Jurisdictional Competition in Parent/Non-Parent Interstate Child Custody Cases, 28 Ind. L. Rev. 65, 90 (1994). See Thompson, 484 U.S. at 181, 183 ("[T]he principal problem Congress was seeking to remedy was the inapplicability of full faith and credit requirements to custody determinations. . . . The sponsors and supporters of the Act continually indicated that the purpose of the PKPA was to provide for nationwide enforcement of custody orders made in accordance with the terms of the UCCJA. . . . Congress' chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations . . . .").

Here, the enforcement or modification of an out-of-state court order regarding custody or visitation was not in issue before the circuit court. Instead, the circuit court was asked to address and modify its own previous order. Under these

facts, the full faith and credit clause is irrelevant.  As a
result, the PKPA is also irrelevant.

Accordingly, we find the circuit court's exercise of
continuing jurisdiction over the custody and visitation issues
presented by the parties subsequent to the November order did
not violate any provision of the PKPA.

V.

COURT'S FAILURE TO RECUSE ITSELF

On December 8, 1997, husband moved the trial judge to
recuse himself or transfer the case to the Superior Court for
the District of Columbia.  No testimony was received in
conjunction with the allegations.  Instead, husband filed two
affidavits over wife's objection.  Graeme Baxter's affidavit
stated she overheard the trial judge make unkind remarks about
husband to the court reporter and bailiff while she waited in
the courtroom before testifying at a hearing on October 30,
1997.  According to Baxter, the judge stated that "the problem
with this case is that [husband] has gone about this the wrong
way because he is too rich," that "[husband] bought his way onto
the board of one of the children's schools," and that "all of
[husband's] money could not help him to have a relationship with
his children."  Baxter also alleged the judge made these remarks
with a tone that indicated "strong animosity" toward husband.
Husband, by affidavit, also alleged the judge's wife had asked

one of husband's former neighbors to "get the Garden Club girls to rally round [wife]" regarding the parties' dispute.

At a hearing on December 9, 1997, husband asserted that, based on the judge's alleged statements, he had lost faith in the judge's ability to act impartially, contending that his perception of bias required the judge to recuse himself or transfer the case to the District of Columbia.  In rebuttal, wife's counsel proffered that he had contacted the court reporter, who could not verify that such statements had been made.  The statement allegedly made by the judge's wife to husband's former neighbor was denied by the neighbor.[2]  Wife also raised hearsay objections to husband's use of the affidavits.[3]

Addressing husband's allegations from the bench, the judge stated he held no feelings of animosity toward him and did not believe recusal was "necessary or appropriate . . . at this time."  The judge entered an order denying husband's motion on

---

[2] The denial was submitted by the proffer of wife's counsel.

[3] The court did not expressly rule on this objection but stated from the bench:

> I don't think it's incumbent upon the Court to sit here and answer these affidavits or these allegations that are made in these affidavits.  I, quite frankly, would think that the person would be brought here to testify before the Court as to what was said or wasn't said, rather than an affidavit, so that somebody can have an opportunity to find out, you know, cross-examine.  However, maybe this is the proper way to proceed.  I don't know.  I suppose it is.

the same day. We find no error in the judge's denial of husband's motion to recuse.

Decisions regarding a judge's impartiality are to be made by the judge in the exercise of his or her discretion and will be reversed on appeal only upon a finding that the court abused its discretion in deciding the question. See Davis v. Commonwealth, 21 Va. App. 587, 591, 466 S.E.2d 741, 743 (1996). In the exercise of such discretion, "a judge must not only consider his or her true state of impartiality, but also the public's perception of his or her fairness, so that public confidence in the integrity of the judicial system is maintained." Buchanan v. Buchanan, 14 Va. App. 53, 55, 415 S.E.2d 237, 238 (1992).

In this case, husband's claim of bias is without evidence to support it. Under Virginia law, unless subject to a hearsay exception, affidavits are generally not admissible as evidence. See Neal v. Commonwealth, 15 Va. App. 416, 421-22, 425 S.E.2d 521, 524-25 (1992); Charles E. Friend, The Law of Evidence in Virginia § 18-28 (4th ed. 1993). "'When evidence apparently inadmissible is offered for a limited purpose, the party making the offer has the burden of making clear to the court his or her theory of admissibility.'" Neal, 15 Va. App. at 422, 425 S.E.2d at 525 (quoting State v. Davis, 269 N.W.2d 434, 442 (Iowa 1978)). Other than the statements presented by affidavit, no

evidence in support of husband's allegations of bias was presented.

Even assuming the court admitted the affidavits notwithstanding their hearsay nature, we find no abuse of discretion in the court's denial of husband's motion to recuse. Nothing in the record indicates that any bias actually affected the proceedings. See Buchanan, 14 Va. App. at 56, 415 S.E.2d at 238. Moreover, "'courts are practically unanimous in the view that neither the forming or expressing of an opinion upon a matter or issue which may come before him in a latter proceeding disqualifies a judge in a subsequent matter." Id. at 55, 415 S.E.2d at 238. Finally, contrary to husband's argument, it is the public's perception of bias, not a litigant's personal perception, that a judge must consider when determining whether recusal is necessary to preserve the integrity of the judicial system. See id. We find no abuse of discretion in the trial judge's assessment of his own impartiality and in his refusal to recuse himself based on husband's personal perception of bias.

V.

FINDING OF CONTEMPT

At the hearing on December 9, 1997, wife informed the court of a bill for approximately $15,000 in attorney's fees and asked that she be awarded the full amount, rather than seventy-five percent of her fees as the court had done in the past. In support of her request, wife cited three new lawsuits filed by

husband against her and her inability to pay her current legal fees. Husband objected to wife's request.

The court decided to alter its previous award of fees and ordered husband to pay eighty percent of wife's fees, amounting to $12,905.38, within thirty days. The court offered no reasons for its decision, stating, "I think [the fees] ought to be altered a little bit, but we're not going to alter it a whole lot. I think it ought to be eighty percent and twenty percent." Husband immediately noted an objection without stating his grounds. On the court's order, husband wrote his objections above counsel's signature; these objections were based on the court's lack of jurisdiction and the court's failure to grant his motion to recuse.

On January 21, 1998, wife filed a Petition for Order to Show Cause why husband should not be held in contempt for failing to pay her attorney's fees. The court issued an Order to Show Cause and, on January 23, 1998, heard argument.

On January 30, 1998, the court entered a decree finding husband in contempt, but permitting husband to purge the contempt if he paid the fees or was legally relieved of the necessity to do so. Husband subsequently filed an irrevocable letter of credit in an amount sufficient to cover the attorney's fees.

Husband asserts two grounds upon which the court allegedly erred in finding him in contempt. Husband first argues the

court's order to pay wife's attorney's fees was void because the court, for reasons already discussed above, did not have jurisdiction.  See Lating v. Commonwealth, 205 Va. 511, 513, 137 S.E.2d 896, 898 (1964) ("[T]he disobedience of a void order is not contempt.").  On the grounds stated earlier, we find this argument to be without merit.

Husband also contends the court erred in entering its order to pay attorney's fees without an evidentiary hearing or competent testimony to determine whether its award was reasonable.  Because husband did not raise an objection on this ground before the circuit court, Rule 5A:18 bars husband from raising this claim for the first time on appeal.  See Rule 5A:18; Lee v. Lee, 12 Va. App. 512, 517, 404 S.E.2d 736, 738 (1991) (en banc).  Furthermore, having examined the issue raised herein, we find no reason to invoke any exception to the general applicability of Rule 5A:18.

For the reasons stated, we affirm the decisions of the circuit court.

                                                    Affirmed.