COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Senior Judge Overton
Argued at Chesapeake, Virginia


ANDREA CATHERINE WILLIAMS KEY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1079-04-1                      JUDGE LARRY G. ELDER
                                                    DECEMBER 14, 2004
JAMES DARREN KEY, II


                FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                            Rodham T. Delk, Jr., Judge

           Mary Elizabeth Davis (Hofheimer/Ferrebee, P.C., on brief), for
           appellant.

           Archer L. Jones, II (Jones & Jones, P.C., on brief), for appellee.


        Andrea Catherine Williams Key (mother) appeals from a decision of the Circuit Court of

Isle of Wight County holding that it had continuing jurisdiction to consider the issue of custody

of the two children born of her marriage to James Darren Key, II, (father) and awarding father

custody.  Mother contends the court lost jurisdiction after awarding custody of the children to her

because the court's handwritten custody order was a final order, all parties left the state of

Virginia, and Virginia's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)

did not thereafter authorize it to exercise jurisdiction.  Father contends this Court cannot consider

mother's appeal because she has failed to present a sufficient record to permit review.  He also

opposes the appeal on the merits and seeks an award of attorney's fees.

        We hold the trial court's April 22, 2003 order awarding custody to mother was a final

order and that the court lacked authority based solely on that order to exercise continuing

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

jurisdiction over the child custody matter. We reverse and remand to the trial court to take evidence relevant to the issue of father's residence and any other basis upon which subject matter jurisdiction may rest. Because we reverse, we deny father's request for an award of attorney's fees.

## I.

## A.

## FINALITY OF HANDWRITTEN ORDER

Mother contends the trial court's order of April 22, 2003, although handwritten, was a final order within the meaning of Rule 1:1 and that, absent a statutory basis for the renewed exercise of jurisdiction over custody and visitation, the court lost jurisdiction to modify the April 22, 2003 order following expiration of 21 days from the date of its entry. We agree.

As we noted in Vokes v. Vokes, 28 Va. App. 349, 504 S.E.2d 865 (1998),

> Under Rule 1:1, a trial court is divested of jurisdiction over a matter twenty-one days after the entry of a final order unless within the twenty-one-day period it enters an order suspending or vacating the final order.
>
>> "Neither the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1 . . . ."
>
> D'Alessandro[ v. Commonwealth], 15 Va. App. [163,] 166, 423 S.E.2d [199,] 201 [(1992)] (quoting [Sch. Bd. v.] Caudill Rowlett Scott, Inc., 237 Va. [550,] 556, 379 S.E.2d [319,] 323 [(1989)]). Once the twenty-one-day period of Rule 1:1 has expired without an intervening order tolling the running of the time period, every action taken by a court thereafter to alter or vacate the final order is a nullity unless one of the limited exceptions to the preclusive effect of Rule 1:1 applies.

Id. at 357-38, 504 S.E.2d at 869 (citation omitted).

In Vokes, the trial court ruled from the bench that Mr. Vokes would receive custody of the parties' two sons and later, on July 3, 1997, entered an order reflecting its ruling. Id. at 353, 504 S.E.2d at 867. By the time the date for the hearing on the entry of the order arrived, Mrs. Vokes had filed a motion for reconsideration and asked the court to delay entering the order "'so that [Mrs. Vokes's] appeal time doesn't start running.'" Id. "In an apparent attempt to satisfy both parties' requests, the trial court amended the final paragraph of the order." Id. at 353-54, 504 S.E.2d at 867. Instead of providing that "this cause shall remain on the docket of this Court *for monitoring the visitation*," the court changed the language to read that "this cause shall remain on the docket of this Court *for further hearing*." Id. at 354, 504 S.E.2d at 867-68 (emphases added). The court "emphasized that it would not rehear the case" at the hearing on mother's motion for reconsideration, and following that hearing on August 8, 1997, it denied Mrs. Vokes's motion for reconsideration and ordered her to pay Mr. Vokes's attorney's fees. Id. It entered an order reflecting those rulings on October 20, 1997. Id. On November 12, 1997, Mrs. Vokes "filed her first and only notice of appeal of any of the orders of the trial court." Id.

We noted that "[a] court order is final if it '"disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the [ruling], and leaves nothing to be done in the cause save to superintend ministerially the execution of the decree."'" Id. at 355, 504 S.E.2d at 868 (quoting Street v. Street, 24 Va. App. 14, 19, 480 S.E.2d 118, 121 (1997) (quoting Richardson v. Gardner, 128 Va. 676, 683, 105 S.E. 225, 227 (1920))). Applying these principles, we held that the trial court's order of July 3, 1997 granting Mr. Vokes's motion to transfer custody "was 'final' because it disposed of the entire subject matter raised in father's motion and granted all of the relief contemplated." Id. at 356, 504 S.E.2d at 868. We found the trial court's amending of the order to attempt to prevent the appeal period from running was insufficient because the order "contained no language stating

- 3 -

that the trial court either modified or vacated the order or suspended its execution." Id. at 357, 504 S.E.2d at 869.

Similarly here, on April 22, 2003, the trial court entered an order resolving all child custody, visitation, and other disputed issues between the parties. The court gave no indication that the order was "modified" or "vacated" or that its "execution" was "suspended." Id. The trial court merely directed the clerk, via a post-it note affixed to the handwritten order, "NOT [TO] *RECORD* THIS ORDER," indicating "A TYPEWRITTEN ORDER WILL BE SUBSTITUTED."[1] (Emphasis added). The trial court indicated in subsequent argument that the purpose for this instruction was that "nobody can read [a handwritten order] if it ever is [photographed]. It becomes an unreadable order in the order book." Further, despite the court's instruction to the clerk not to record the order, father and the trial court proceeded as if the custody and visitation provisions of the order were in full force and effect as of April 22, 2003. Although mother did not comply with the order's visitation provisions, she has never taken the position that the handwritten order was not effective as of its entry on April 22, 2003.

Following the court's entry of the handwritten order on April 22, 2003 the only thing remaining to be done was to substitute a typewritten order so that the substance of the court's ruling regarding custody and visitation could be spread in the order book in a more formal and readable fashion, a purely ministerial act. Thus, the April 22, 2003 order was a final order in that it """dispose[d] of the whole subject, [gave] all the relief that was contemplated, provide[d] with reasonable completeness for giving effect to the [ruling], and [left] nothing to be done in the cause save to superintend ministerially the execution of the decree.""" Id. at 355, 504 S.E.2d at

---

[1] The factual findings the court made in its September 20, 2003 order were incorrect to the extent the court found it "directed that the Order not be *entered* by the Clerk until a typewritten Order could be presented." (Emphasis added). The trial judge signed the order beneath the handwritten notation, "Entered 22 April 2003," and ordered merely that the clerk "not *record* this order." (Emphasis added).

868. The fact that mother still had counsel of record in these proceedings, to whom husband provided copies of his subsequent motions to modify custody, did nothing to provide the court with jurisdiction for purposes of a separate, new modification proceeding.

B.

JURISDICTION TO MODIFY CUSTODY ORDER

Because the court lost jurisdiction of the initial custody and visitation determination following expiration of 21 days from the date of entry of the April 22, 2003 order, it lacked the power to revisit the issue unless it again obtained, under the UCCJEA, jurisdiction to modify the terms of the initial custody and visitation order.

Under settled law, the divorce court generally has continuing jurisdiction to revise or alter its decree concerning the custody and maintenance of minor children. See Code § 20-108; Lutes v. Alexander, 14 Va. App. 1075, 1083, 421 S.E.2d 857, 862 (1992). "The court's authority to alter a previous decree and enter a new decree 'as the circumstances of the parents and the benefit of the children may require' is unaffected by the court's prior removal of the case from its active docket. See Code § 20-108." Scott v. Rutherfoord, 30 Va. App. 176, 182, 516 S.E.2d 225, 228 (1999).

However, when the children and one or both parents no longer live in the state, the court's jurisdiction to modify custody and visitation orders may be affected. In order to "avoid jurisdictional competition and conflict with courts of other states in matters of child custody and to promote cooperation with courts of other states so that a custody decree [or modification thereof] is rendered in a state which can best decide the issue in the interest of the child," Middleton v. Middleton, 227 Va. 82, 93, 314 S.E.2d 362, 367 (1984), Virginia adopted a form of the Uniform Child Custody Jurisdiction Act (UCCJA). The UCCJA has now been superseded by the UCCJEA, a form of which has also been adopted in Virginia.

Virginia courts interpreted the UCCJA to provide that "'When the courts of more than one state have jurisdiction . . . , priority in time determines which court will proceed with the action'" unless the court with priority determines under "'the inconvenient forum principle of [the Act]'" that the courts of another state are better suited to resolve the dispute. Scott, 30 Va. App. at 186, 516 S.E.2d at 230 (quoting UCCJA § 6, 9 U.L.A. 219, 220 cmt. (1988)); see Code § 20-146.13 off. cmt. (stating that under UCCJA, "[c]ontinuing jurisdiction was not specifically addressed" and that "[i]ts absence caused considerable confusion"). Thus, Virginia law provided that, once a Virginia court acquired jurisdiction over a custody or visitation matter, it retained jurisdiction to modify custody or visitation unless it expressly relinquished jurisdiction to another state. See id.

The UCCJEA, as adopted in Virginia, changes this procedure. See Code § 20-146.13. Under the UCCJEA, a Virginia court does not retain exclusive jurisdiction to modify a custody or visitation order simply because it entered the original order determining custody or visitation. See id. Rather, pursuant to Code § 20-146.13, a court retains "exclusive, continuing jurisdiction" only under certain conditions:

> A. Except as otherwise provided in § 20-146.15, a court of this Commonwealth that has made a child custody determination consistent with § 20-146.12 or § 20-146.14 has exclusive, continuing jurisdiction as long as the child, the child's parents, or any person acting as a parent continue to live in this Commonwealth.

Once lost, "[e]xclusive, continuing jurisdiction is not reestablished if, after the child [and] the parents . . . leave the State, the non-custodial parent returns" "to live in this Commonwealth." Code § 20-146.13 off. cmt. 2. If a court that has made a child custody determination does not have exclusive, continuing jurisdiction under Code § 20-146.13(A), it may modify that determination "only if it has jurisdiction to make an initial [custody or visitation] determination under § 20-146.12." Code § 20-146.13(B).

Here, it is undisputed that the trial court had jurisdiction pursuant to Code § 20-146.12, "Initial child custody jurisdiction," to enter the April 22, 2003 order awarding custody to mother pursuant to the parties' agreement. At the time those proceedings were initiated both parties and their children lived in Virginia and had resided in the state since at least the spring of 2001. It remains to be determined whether Virginia's jurisdiction was exclusive and continuing.

Code § 20-146.15, referenced in Code § 20-146.13(A) as a potential basis for jurisdiction, is inapplicable. That code section deals with temporary emergency jurisdiction in cases in which, *inter alia*, "the child is present in this Commonwealth." Code § 20-146.15(A). Here, it is undisputed that the parties' children were in Maryland, and Code § 20-146.15 does not apply.

Thus, the trial court has "exclusive, continuing jurisdiction" if "the child, the child's parents, or any person acting as a parent continue[d] to live in this Commonwealth." Code § 20-146.13(A). It is undisputed that neither the children nor their mother continued to "live" in the Commonwealth. The trial court expressly reserved ruling on the issue of whether father continued to "live" in the Commonwealth despite being stationed in North Carolina.

Assuming for the moment, without deciding, that the trial court lacked exclusive, continuing jurisdiction under subsection (A), subsection (B) authorized it to modify the initial custody determination "only if it ha[d] jurisdiction to make an initial determination under § 20-146.12." Code § 20-146.13(B).

Code § 20-146.12 provides in relevant part as follows:

> A. Except as otherwise provided in § 20-146.15, a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:
>
> 1. This Commonwealth is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth

but a parent or person acting as a parent continues to live in this Commonwealth;

2. A court of another state does not have jurisdiction under subdivision 1, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under § 20-146.18 or § 20-146.19, and (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence and (ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training, and personal relationships;

3. All courts having jurisdiction under subdivision 1 or 2 have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under § 20-146.18 or § 20-146.19; or

4. No court of any other state would have jurisdiction under the criteria specified in subdivision 1, 2, or 3.

B. Subsection A is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.

The UCCJEA defines "Home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." Code § 20-146.1. Because mother and the children moved to Maryland in January 2003 and did not reside in Virginia, under Code § 20-146.12(A)(1), Virginia was not the children's home state within six months prior to commencement of modification proceedings by father's motion of July 21, 2003. Thus, the first half of Code § 20-146.12(A)(1) does not provide a basis for jurisdiction. The second half of § 20-146.12(A)(1) also does not provide a basis for the exercise of jurisdiction under the present posture of this case. Even if the facts supported a finding that Virginia "was the home state of the child within six months before the commencement of the proceeding," Virginia would be unable to exercise jurisdiction unless it

found that a parent "continues to live in this Commonwealth." This is precisely the issue the resolution of which is required to determine the existence of exclusive, continuing jurisdiction under Code § 20-146.13(A) and which the trial court has not yet addressed on the merits. Thus, absent additional factual findings by the trial court, Code § 20-146.12(A)(1) does not provide a basis for the exercise of jurisdiction. Similarly, the exercise of jurisdiction under subsection (A)(2) would require additional evidence and supporting factual findings. Finally, no evidence established that Maryland has deferred its exercise of jurisdiction to allow Virginia to decide the matter. Thus, absent additional factual findings, neither subsection (3) nor subsection (4) of Code § 20-146.12(A) provides a basis for the trial court's exercise of jurisdiction.

Thus, we reverse the trial court's ruling and remand for a hearing on whether the court has continuing subject matter jurisdiction, exclusive or otherwise, to enforce or modify its custody and visitation decree of April 22, 2003. The court must also have personal jurisdiction over mother.[2] On the facts as found and alleged in the record before us, the issue of subject

---

[2] The court lost personal jurisdiction over mother 21 days after entry of its April 22, 2003 order. It was required to obtain personal jurisdiction over mother again in order to modify that order. The Virginia version of the UCCJEA provides in relevant part as follows:

> Notice required for the exercise of jurisdiction when a person is outside this Commonwealth may be given in a manner prescribed by the law of this Commonwealth for service of process or by the law of the state in which the service is attempted or made. Notice may also be by certified or registered mail, return receipt requested, addressed to the last known address of the person to be served. Notice must be given in a manner reasonably calculated to give actual notice and an opportunity to be heard but may be by publication pursuant to §§ 8.01-316 and 8.01-317 if other means are not effective.

Code § 20-146.7(A); see also Code § 8.01-320 (providing that, "[w]hen the court can exercise jurisdiction over the nonresident pursuant to § 8.01-328.1, such service shall have the same effect as personal service on the nonresident within Virginia"); Code § 8.01-328.1 (delineating circumstances under which court may acquire personal jurisdiction over non-resident defendant); § 8.01-329 (providing that "[w]hen personal jurisdiction is authorized by this chapter, service . . .

matter jurisdiction would appear to turn on the factual question of whether father "continues to live in this Commonwealth," cf. Uniform Interstate Family Support Act § 205, cmt. (2001), 9 Pt. 1B U.L.A. 67 (Supp. 2004) ("Of course, residence is a fact question for the trial court, keeping in mind that the question is residence, not domicile."), despite being a member of the military assigned to a duty station in North Carolina, see Code § 20-146.13, off. cmt. 2 ("[T]his section means that the named persons no longer continue to *actually live* within the State. . . .  [The statutory language] is not used in the sense of a technical domicile." (emphasis added)); Code § 20-146.38(A)(3) (noting Act's goal is to hold proceeding "in the state with which the child and his family have the closest connection and where significant evidence concerning his case,

---

may be made in the same manner as provided for in . . . § 8.01-285 [to § 8.01-327.2] in any other case in which personal jurisdiction is exercised over such party").

Father filed a "PETITION FOR [R]ULE TO SHOW CAUSE AND OTHER RELIEF" on August 12, 2003, in which he sought to have mother held in contempt for failing to provide visitation in accordance with the court's prior order, to have mother pay his attorney's fees, to be awarded permanent custody of the parties' children, and to have the court grant "other relief" as the court deems proper.  When the trial court entered the Rule to Show Cause directing mother to appear on August 29, 2003, for failure to comply with the terms of the court's order of visitation, it ordered father to cause to be served on mother at her "last known address," which was listed in the order, a copy of the "Rule to Show Cause with Petition and Affidavit attached."  When the court entered an order memorializing the August 29, 2003 proceedings, it found personal service of the Rule, Petition and Affidavit "was attempted" but "not achieved" and that "posted service . . . was made upon [mother's] last known address."

Mother contends the court did not acquire personal jurisdiction over her because she was not personally served and did not have actual notice of the custody proceedings.  However, service by posting at one's last known address is an acceptable method for effecting service of process under Virginia law.  See Code § 8.01-296 (authorizing service by posting); see also Code § 8.01-329 (providing that "[w]hen personal jurisdiction is authorized by this chapter, service . . . may be made in the same manner as provided for in . . . § 8.01-285 [to § 8.01-327.2] in any other case in which personal jurisdiction is exercised over such party").  Thus, posted service of the Rule, Petition and Affidavit at the Suitland, Maryland, address, which the court found was mother's last known address, was notice sufficient under Code § 20-146.7(A) to provide the trial court with personal jurisdiction over mother for purposes of modifying its prior custody order.  The court did not rule on the contempt issue, and we need not decide whether the court had personal jurisdiction over mother for purposes of adjudicating mother in contempt of court.  See Code § 8.01-314 (providing that "in any proceeding in which a final order has been entered, service on an attorney as provided herein shall not be sufficient to constitute personal jurisdiction over a party in any proceeding citing that party for contempt, either civil or criminal, unless personal service is also made on the party").

- 10 -

protection, training, and personal relationships is most readily available"); <u>Hart v. Hart</u>, 327 S.E.2d 631, 635-37 (N.C. Ct. App. 1985) (holding expressly that military parent's domicile does not control where parent "live[s]" for purposes of home state jurisdiction under North Carolina's equivalent of Code § 20-146.12(A)(1) and that parent's being stationed at camp in North Carolina while on active duty was "sufficient to satisfy the home state rule requirement," and holding implicitly that parent's temporary absence while stationed overseas for seven months before returning to North Carolina did not prevent finding that father "'continues to live in this state'"); <u>cf.</u> Code § 20-146.1 (defining child's "Home state" as "the state in which a child *lived* with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding" (emphasis added)); <u>Brenner v. Cavin</u>, 295 S.E.2d 135, 137 (Ga. Ct. App. 1982) (in analyzing whether jurisdiction was child's "home state" under UCCJA, defined in part as the state in which *the child* "lived," holding that "'[l]iving with' is a commonplace term having no technical meaning and means literally what it says" and that "[i]f the General Assembly had intended that jurisdiction be based upon legal residence or domicile, it would undoubtedly have used these technical terms").[3]

---

[3] It appears that a majority of state courts considering where a parent or child "lives" under the former UCCJA have concluded, as did the Georgia Court of Appeals in <u>Brenner</u>, 295 S.E.2d at 137, that physical presence is controlling. <u>See</u> <u>Fletcher v. Fletcher</u>, 726 S.W.2d 684, 685-86 (Ark. Ct. App. 1987) (holding that although father claimed Arkansas as permanent residence while in military, Arkansas was not and never had been child's home state because child had never resided there); <u>Burr v. Burr</u>, 711 So. 2d 303, 305-07 (La. 1998) (where father was member of armed services and maintained legal residence in Louisiana but child and wife never lived there and family was stationed in Arizona, North Carolina, and then in the United Kingdom for nine months before mother and child returned to mother's original home in Arizona and filed for divorce, holding Louisiana court lacked jurisdiction to make initial custody determination); <u>Consford v. Consford</u>, 711 N.Y.S.2d 199, 203-05 (N.Y. Sup. Ct. App. Div. 2000) (holding that parents' choice of Texas domicile after returning from overseas duty did not determine child's home state under UCCJA because family remained in Texas for only two months while awaiting new orders and was subsequently sent to Arizona for indefinite assignment, where they functioned as a family unit for five months before custody dispute arose). <u>But see</u> <u>Rholfs v. Rholfs</u>, 666 So. 2d 568, 569-71 (Fla. Dist. Ct. App. 1996) (holding that "[a]bsent an intent to the contrary, a parent who is a Florida resident and who is away from [the]

II.

For these reasons, we conclude the court's order of April 22, 2003 did not provide the court with continuing jurisdiction over custody and visitation matters. We remand to the trial court to take evidence relevant to the issue of father's residence and any other basis upon which subject matter jurisdiction may rest. Thus, we reverse the trial court's ruling and remand for further proceedings consistent with this opinion. Because we reverse, we deny father's request for an award of attorney's fees.

<u>Reversed and remanded.</u>

---

state on military assignment [in Virginia for 8 months and is scheduled to be transferred to Japan] continues to live in [the] state within the meaning of the UCCJA for the purpose of determining the parent's residence" but noting finding "that the [military parent] continues to reside in Florida" was "a legal fiction" and was based in part on "the great deference [the UCCJA] afford[s] the state exercising initial jurisdiction"); <u>Lemley v. Miller</u>, 932 S.W.2d 284, 285, 287 (Tex. Civ. App. 1996) (holding that where father resided at all times in Oklahoma, where child was born; mother and stepfather resided with child for 18 months in Texas and then spent 11 months in Germany pursuant to stepfather's military orders before mother returned to Texas with child and instituted modification proceedings against father, time in Germany was temporary absence to be treated as time in Texas and, thus, Texas was child's home state). <u>See generally</u> <u>Holder v. Holder</u>, 2002 Cal. App. Unpub. LEXIS 2898, *15-22 (Cal. Ct. App. Mar. 20, 2002) (discussing in dicta conflict under UCCJEA over home state jurisdiction involving service member stationed in a foreign country); <u>id.</u> *42-53 (Cornell, J., dissenting).

- 12 -