506 S.E.2d 58

**STATE of West Virginia ex rel. Melinda C. CONFORTI, Petitioner,**

v.

**Honorable Ronald E. WILSON, Judge of the Circuit Court of Hancock County, and Satish Kumar Tandon, Respondents.**

**No. 25044.**

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1998.

Decided July 6, 1998.

---

17. Appellant Horton's counsel further stated, "Mr. Allen's statement was, it wouldn't matter if

I told you the truth anyway. Mr. Horton's statement was, I didn't murder no man."

22

Roger A. Isla, Steubenville, OH, for Petitioner.

M. Eric Frankovitch, Frankovitch, Anetakis, Colantonio & Simon, Weirton, for Respondents.

PER CURIAM: [1]

This case is before this Court upon a petition for writ of prohibition filed by the petitioner, Melinda Conforti, against the respondents, the Honorable Ronald Wilson, Judge of the Circuit Court of Hancock County, and Satish K. Tandon. The petitioner seeks to prohibit the respondent judge from enforcing his January 12, 1998 order finding that West Virginia is the appropriate jurisdictional forum to consider a petition for modification of

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

custody filed by Mr. Tandon. We issued a rule to show cause and now grant the writ.

## I

The petitioner and Mr. Tandon were divorced on December 14, 1994, pursuant to a divorce decree issued by the Court of Common Pleas of Jefferson County, Ohio. The petitioner was awarded custody of the parties' son[2] and Mr. Tandon, was granted supervised visitation.[3]

On May 15, 1997, Mr. Tandon filed a petition to modify jurisdiction and child custody in the Circuit Court of Hancock County, West Virginia. At that time, the petitioner and child were living in Hancock County.[4] On July 15, 1997, the family law master for the Circuit Court of Hancock County issued a recommended order declaring that the State of West Virginia declined to exercise jurisdiction pursuant to W.Va.Code § 48–10–7 (1981). The family law master found that the Court of Common Pleas in Jefferson County, Ohio, was the more appropriate forum due to the past extensive record and evidence which resulted in the current Ohio custody order.

A timely petition for review of the recommended order was filed by Mr. Tandon. As a result, Judge Wilson issued an opinion and order on August 11, 1997, remanding the matter to the family law master for consideration pursuant to W.Va.Code § 48–10–7(c)(3) and a determination of whether West Virginia residents would be the primary witnesses regarding the future care, custody, and control of the minor child. In September 1997, the petitioner and child moved back to Ohio.

Thereafter, the family law master issued a second recommended order concluding that West Virginia was the more appropriate jurisdiction and convenient forum for litigation of Mr. Tandon's petition to modify custody. On January 12, 1998, Judge Wilson adopted the family law master's recommended order. In response, the Honorable John J. Mascio, Judge of the Court of Common Pleas of Jefferson County, Ohio, issued an order on January 23, 1998, concluding that West Virginia was the most appropriate forum.[5] Subsequently, by order dated March 20, 1998, Judge Mascio vacated his January 23, 1998 order and held the same for naught pending a hearing on the issues.

On March 26, 1998, the petitioner filed a petition for writ of prohibition with this Court seeking to prohibit the Circuit Court of Hancock County from exercising jurisdiction in this matter.[6]

## II

The general rule with respect to the propriety of the extraordinary remedy of prohibition is set forth in Syllabus Point 1 of *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953): "Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." *See also* W.Va.Code § 53–1–1 (1923).

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable

---

2. The child was born on August 1, 1991, and is now six years old.

3. According to the petitioner, supervised visitation was ordered because Mr. Tandon, a native of India, was deemed a risk to flee the country with the child. In addition, Mr. Tandon was diagnosed with a narcissistic personality disorder.

4. The petitioner and the child had moved to Hancock County before the divorce in June 1994.

Hancock County is approximately a ten-minute drive from Jefferson County, Ohio.

5. Apparently, Judge Wilson served Judge Mascio with a copy of his January 12, 1998 order.

6. While this petition was pending, a third order was entered by Judge Mascio. By order dated June 5, 1998, the Court of Common Pleas of Jefferson County, Ohio, again declined jurisdiction in favor of West Virginia.

on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

Once again, we are confronted with an interstate custody dispute and are essentially asked to determine whether West Virginia is the appropriate jurisdictional forum for consideration of a petition to modify custody where the original custody decree was issued by the State of Ohio. On previous occasions, we have recognized that such disputes are governed by the Parental Kidnapping Prevention Act of 1980 [hereinafter "PKPA"], 28 U.S.C. 1738A (1980), and the Uniform Child Custody Jurisdiction Act [hereinafter "UCCJA"], codified in W.Va. Code § 48–10–1 *et seq.* Because this case involves mixed questions of law and fact that require consideration of legal concepts and statutory construction, our review is plenary. *See Burnside v. Burnside*, 194 W.Va. 263, 265, 460 S.E.2d 264, 266 (1995).

In Syllabus Point 1 of *Arbogast v. Arbogast*, 174 W.Va. 498, 327 S.E.2d 675 (1984) we explained that "[t]he [PKPA] extends full faith and credit principles to child custody decrees and requires every state to enforce sister state custody determinations that are consistent with the act." Similarly, we indicated that the UCCJA "provides that foreign states' custody decrees are to be recognized and enforced by West Virginia courts if they accord with statutory provisions substantially similar to those of the UCCJA or meet UCCJA jurisdictional standards." *Arbogast*, 174 W.Va. at 502, 327 S.E.2d at 679. Although both acts attempt to establish definite rules

about which state has jurisdiction of custody disputes, the PKPA is "more rigid, allows less judicial discretion, and has attempted to provide more certainty as to the jurisdiction of courts." *Id.* Nonetheless, in this case, the petitioner contends that under both the PKPA and UCCJA, West Virginia does not have jurisdiction in this matter.

 Naturally, as a federal jurisdictional statute, the PKPA preempts the UCCJA by virtue of the Supremacy Clause. *Id. See also Sheila L. on Behalf of Ronald M.M. v. Ronald P.M.*, 195 W.Va. 210, 218, 465 S.E.2d 210, 218 (1995). Accordingly, we begin our analysis by consulting the PKPA. The petitioner asserts that because the PKPA favors continuing jurisdiction in the state which issued the valid, initial decree, Ohio is the appropriate forum for consideration of Mr. Tandon's petition to modify custody. In Syllabus Point 2 of *Ronald P.M.*, we recognized that:

> Under the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A(d), a court may continue its jurisdiction if it has made a child custody determination consistent with the provisions of this section, if it maintains jurisdiction under its law, and if either the child or a contestant continues to reside in the state. A custody determination is defined in 28 U.S.C. § 1738A(b)(3) as a judgement, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications.

 In this case, there is no contention that the original Ohio custody order was not valid. Likewise, it is undisputed that Mr. Tandon has continued to reside in Ohio since the parties divorced. In addition, Rule 75 of the Ohio Rules of Civil Procedure which applies to divorce, annulment, and legal separation actions, provides, in pertinent part:

> **(I) Continuing jurisdiction.** The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6. When the continuing jurisdiction of the court is invoked pursuant to this division, the discov-

ery procedures set forth in Civ.R. 26 to 37 shall apply.

(Emphasis in original). Thus, under the PKPA, Ohio continued to have jurisdiction in this matter at the time the proceedings were commenced in West Virginia.

■ Despite the preference for continuing jurisdiction in the State that issued the initial decree, the PKPA permits another state to modify a determination of custody if:

(i) it has jurisdiction to make such a child custody determination; and

(ii) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.[7]

28 U.S.C. § 1738A(f). Based upon this provision, Mr. Tandon contends that West Virginia has jurisdiction because West Virginia was the "home state" of the child at the time the modification petition was filed and the State of Ohio declined to exercise jurisdiction in this matter.

The UCCJA, specifically, W.Va.Code § 48-10-3(a)(1) (1981), provides that a court of this State has jurisdiction to make a modification of child custody if "[t]his State ... is the home state of the child at the time of commencement of the proceeding[.]" W.Va.Code § 48-10-2(5) (1981) defines "home state" as "the state in which the child immediately preceding the time involved lived with his parents, a parent or person acting as a parent for at least six consecutive months[.]" Unquestionably, the petitioner and child were living in West Virginia at the time Mr. Tandon filed his petition to modify custody. Thus, West Virginia would have jurisdiction pursuant to both UCCJA and the PKPA.

■ However, W.Va.Code § 48-10-7(a) (1981) provides that a court which has jurisdiction under the UCCJA "may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." In this regard, we have held that:

The Uniform Child Custody Jurisdiction Act, W.Va.Code §§ 48-10-1 to -26 (1986), is premised on the theory that the best interests of a child are served by limiting jurisdiction to modify a child custody decree to the court which has the maximum amount of evidence regarding the child's present and future welfare.

Syllabus Point 1, *In the Interest of Brandon L.E.*, 183 W.Va. 113, 394 S.E.2d 515 (1990).

As discussed above, the family law master originally determined that Ohio was the proper forum for considering modification of custody in this case because the original custody decree was issued in that State. However, the circuit court refused the family law master's recommendation declining jurisdiction. On remand, the family law master determined that West Virginia was the appropriate jurisdictional forum primarily because most of the witnesses that would be involved in the proceedings resided in West Virginia. Interestingly, the family law master (and the circuit court) attached little significance to the fact that the petitioner and child had already moved back to Ohio, merely noting that they had lived there less than the requisite six months needed to reconfer jurisdiction on that State.

Upon review, we find it very significant that the petitioner and child have moved back to Ohio. Simply put, no party to this custody dispute presently resides in West Virginia. The child and both parents now live in Ohio. The UCCJA provides that one factor for a court to consider in determining whether it is an inconvenient forum is whether "another state is or recently was the child's home state." W.Va.Code § 48-10-7(c)(1). Obviously, evidence concerning the present and future welfare of the child is now in Ohio. Given this fact, we can conceive of no reason for the State of West Virginia to

7. The UCCJA, specifically, W.Va.Code § 48-10-15(a) (1981), also provides:

If a court of another state has made a custody decree, a court of this State shall not modify that decree unless (1) it appears to the court of this State that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction.

make a custody determination that will affect persons who no longer live in this State. Under the UCCJA and the PKPA, the best interests of the child would be served by the State of Ohio making the decision regarding custody modification. Therefore, we find that a writ of prohibition is appropriate, not because the circuit court had no jurisdiction, but because the circuit court exceeded its legitimate powers by exercising its jurisdiction.[8]

Accordingly, for the reasons set forth above, we grant the writ and prohibit the Circuit Court of Hancock County from enforcing its January 12, 1998 order.

Writ granted.

---

8. We do acknowledge that the State of Ohio has declined to exercise jurisdiction in favor of West Virginia because of Judge Wilson's January 12, 1998 order. In its June 5, 1998 order, the Ohio court stated that if it were to assume jurisdiction, it would be tantamount to overruling a court of another state. The Ohio court is aware of this proceeding in prohibition and we believe that it will act in accordance with our decision herein.