COURT OF APPEALS OF VIRGINIA


Present:    Judge Clements, Senior Judges Willis and Annunziata
Argued at Alexandria, Virginia


JANET MILLER-JENKINS
                                                            OPINION BY
v.        Record No. 2654-04-4              JUDGE JERE M.H. WILLIS, JR.
                                                       NOVEMBER 28, 2006
LISA MILLER-JENKINS


                FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                            John R. Prosser, Judge

        Joseph R. Price (Lisa M. Vollendorf; Gregory R. Nevins; Rebecca
        Glenberg; John L. Squires; Arent Fox PLLC; Lambda Legal Defense
        & Education Fund, Inc.; American Civil Liberties Union; Equality
        Virginia Education Fund, on briefs), for appellant.

        Rena M. Lindevaldsen (Mathew D. Staver; Scott E. Thompson;
        Liberty Counsel, on brief), for appellee.

        *Amicus Curiae*:  Virginia Chapter of the National Association of
        Social Workers; Virginia Women Attorneys Association; Virginia
        Poverty Law Center, Inc.; Virginia National Organization for
        Women; Virginia Organizing Project (Thomas M. Wolf; Kenya N.
        Washington; LeClair Ryan, PC, on brief), for appellant.


        Janet Miller-Jenkins ("Janet") appeals the October 15, 2004 "Final Order of Parentage"

of the Circuit Court of Frederick County ("trial court").  In that order, the trial court held (1) that

Lisa Miller-Jenkins ("Lisa") is "the sole biological and natural parent of" IMJ, a minor, (2) that

Lisa "solely has the legal rights, privileges, duties and obligations as parent hereby established

for the health, safety, and welfare of" IMJ, and (3) that neither Janet "nor any other person has

any claims of parentage or visitation rights over" IMJ.

        On appeal, Janet contends the trial court erred (1) in failing to recognize that the federal

Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, barred its exercise of

jurisdiction, (2) in holding that the Virginia Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Code § 20-146.1 *et seq.*, permitted it to exercise jurisdiction, and (3) in refusing to enforce the June 17, 2004 custody order of the Rutland County, Vermont Family Court ("Vermont court").

We hold that the trial court erred in failing to recognize that the PKPA barred its exercise of jurisdiction. Accordingly, we vacate the orders of the trial court and remand this case with instruction to grant full faith and credit to the custody and visitation orders of the Vermont court.

## I. BACKGROUND

Beginning in the late 1990's, the parties lived together in Virginia. On December 19, 2000, they traveled to Vermont and entered into a civil union pursuant to the laws of that state. See Vt. Stat. Ann. Tit. 15, § 1201 *et seq.* Thereafter, while residing in Virginia, Lisa was artificially inseminated with sperm from an anonymous donor. In April 2002, she gave birth to IMJ. In August 2002, the parties and IMJ moved to Vermont and established residence there. In September 2003, the parties ended their relationship. Lisa moved to Virginia with IMJ. Janet remained in Vermont.

On November 24, 2003, Lisa filed in the Vermont court a "Complaint for Civil Union Dissolution." She designated IMJ as "the biological or adoptive" child of the "civil union." She asked the Vermont court to dissolve the civil union, to award her legal and physical "rights and responsibilities for the minor child," to award Janet "suitable parent/child contact (supervised)," and to "award payment of suitable child support money."

On June 17, 2004, the Vermont court entered a "Temporary Order Re: Parental Rights & Responsibilities." In that order, the Vermont court awarded Lisa "temporary legal and physical responsibility for the minor child of the parties," and awarded Janet "on a temporary basis,

- 2 -

parent-child contact with the minor child as follows . . . ." The order then listed the specifics of that contact, and in so listing thrice used the word "visitation."

On July 1, 2004, the day Virginia's Marriage Affirmation Act ("MAA"), Code § 20-45.3 became law, Lisa filed in the trial court a "Petition to Establish Parentage and for Declaratory Relief." She asserted that she had "sole custody" of IMJ, and asked the court (1) to declare that she was "the sole parent of" IMJ, (2) to rule that she was "to be the sole parent of and to have sole parental rights over" IMJ, (3) to adjudicate any parental rights claimed by Janet "to be nugatory, void, illegal and/or unenforceable," and (4) to award her attorney's fees and costs.

On July 19, 2004, after learning of the petition filed by Lisa in Virginia, the Vermont court entered the following order:

> This Vermont Court has and will continue to have jurisdiction over this case including all parent-child contact issues. This Court is unaware of any proceeding available in a state that does not recognize a civil union to resolve the issue of this case. This Court will not and cannot defer to a different State that would preclude the parties from a remedy.
>
> The Temporary Order for parent-child contact [is] to be followed. Failure of the custodial parent to allow contact will result in an immediate hearing on the need to change custody.

On July 29, 2004, Janet filed a demurrer to Lisa's Virginia petition. On August 18, 2004, the trial court entered an order (1) recognizing that Janet was entering a special appearance for the purpose of contesting jurisdiction, (2) directing the parties to file memoranda addressing the question of jurisdiction, and (3) staying all visitation between Janet and IMJ except for supervised visitation in Virginia. Following an August 24, 2004 hearing, the trial court ruled it had jurisdiction pursuant to the MAA and the UCCJEA. It memorialized this ruling in a September 9, 2004 order.[1]

---

[1] The trial court, in the September 9, 2004 order, also certified the matter for an interlocutory appeal to this Court pursuant to Code § 8.01-670.1. Janet noted an appeal. Record

- 3 -

Meanwhile, the Vermont court, by order entered September 2, 2004, held Lisa in contempt for refusing to comply with the child visitation terms of its June 17, 2004 order.

On October 15, 2004, the trial court entered the final order in this case, setting forth the holdings delineated in the first paragraph of this opinion.

On appeal by Lisa, the Supreme Court of Vermont ("Vermont Supreme Court") affirmed the judgment of the Vermont court, holding, *inter alia*, that the civil union entered into by Lisa and Janet was valid under Vermont law; that the Vermont court had jurisdiction to dissolve that civil union and to determine all its implications, including the parentage of and parental rights and responsibilities with respect to IMJ; and that the Vermont court acted properly in holding Janet to be a parent of IMJ and in assigning parental rights and responsibilities to her. Miller-Jenkins v. Miller-Jenkins, __ A.2d __, 2006 Vt. LEXIS 159, at ** 2-3, (Vt. Aug. 4, 2006). It held that PKPA afforded preemptive jurisdiction to Vermont and denied full faith and credit to Virginia orders contradicting those entered by the Vermont court. Id. at __, 2006 Vt. LEXIS 159, at ** 13.

## II.  ANALYSIS

### A.  The PKPA

#### 1. *Statutory History and Analysis*

28 U.S.C. § 1738A, commonly referred to as the Parental Kidnapping Prevention Act, carries the following title:  "Full faith and credit given to child custody determinations." Subsection (a) of the PKPA reads:  "The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of

---

No. 2192-04-4.  By order entered January 6, 2005, we dismissed that appeal, finding that we lacked jurisdiction pursuant to either Code § 8.01-670.1 or Code § 17.1-405.

this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State."

The United States Supreme Court has succinctly summarized the thrust of the PKPA:

> The Parental Kidnap[p]ing Prevention Act (PKPA or Act) imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act. In order for a state court's custody decree to be consistent with the provisions of the Act, the State must have jurisdiction under its own local law and one of five conditions set out in § 1738A(c)(2) must be met. Briefly put, these conditions authorize the state court to enter a custody decree if the child's home is or recently has been in the State, if the child has no home State and it would be in the child's best interest for the State to assume jurisdiction, or if the child is present in the State and has been abandoned or abused. Once a State exercises jurisdiction consistently with the provisions of the Act, no other State may exercise concurrent jurisdiction over the custody dispute, § 1738A(g), even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree.

Thompson v. Thompson, 484 U.S. 174, 175-77 (1988) (footnotes omitted).

The PKPA had its genesis in the confusion concerning the applicability of the full faith and credit doctrine, 28 U.S.C. § 1738, to child custody orders. See Thompson, 484 U.S. at 180. Indeed, "a parent who lost a custody battle in one State had an incentive to kidnap the child and move to another State to relitigate the issue." Id. Yet, despite its unofficial and common title, the PKPA is not limited to parental kidnapping cases.

> "[T]he principal problem Congress was seeking to remedy was the inapplicability of full faith and credit requirements to custody determinations. . . . The sponsors and supporters of the Act continually indicated that the purpose of the PKPA was to provide for nationwide enforcement of custody orders made in accordance with the terms of the UCCJA[2]. . . . *Congress' chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations . . . .*"

---

[2] The Uniform Child Custody Jurisdiction Act, since superceded by the UCCJEA.

Scott v. Rutherfoord, 30 Va. App. 176, 187, 516 S.E.2d 225, 231 (1999) (quoting Thompson, 484 U.S. at 181, 183) (emphasis added).  See also Wilson v. Gouse, 441 S.E.2d 57, 60 (Ga. 1994) ("the PKPA was intended not only to apply where a child was abducted by a parent and removed to another state but to remedy what was widely considered to be the inapplicability of the full faith and credit statute to child custody orders" (footnote omitted)).

Moreover, it is well settled that the PKPA preempts any conflicting state law.  See Meade v. Meade, 812 F.2d 1473, 1476 (4th Cir. 1987) ("The PKPA quite simply preempts conflicting state court methods for ascertaining custody jurisdiction.").  See also Murphy v. Woerner, 748 P.2d 749, 750 (Alaska 1988); Delk v. Gonzalez, 658 N.E.2d 681, 684 (Mass. 1995); In re Clausen, 502 N.W.2d 649, 673-74 (Mich. 1993); In re Relationship of Henry, 951 P.2d 135, 138 (Or. 1997); State ex rel. Conforti v. Wilson, 506 S.E.2d 58, 62 (W. Va. 1998); Michalik v. Michalik, 494 N.W.2d 391, 394 (Wis. 1993).

Pursuant to Vt. Stat. Ann. tit. 15, § 1206,[3] Lisa filed a "Complaint for Civil Union Dissolution" with the Vermont court on November 24, 2003.  By doing so, she placed before the Vermont court the issues of the parties' legal and physical "rights and responsibilities" concerning IMJ and "suitable parent/child contact."  In Vermont, the term "parental rights and responsibilities" means "the rights and responsibilities related to a child's physical living arrangements, parent child contact, education, medical and dental care, religion, travel and any other matter involving a child's welfare and upbringing."  Vt. Stat. Ann. tit. 15, § 664(1).  And the term "parent child contact" means "the right of a parent who does not have physical responsibility to have visitation with the child."  Vt. Stat. Ann. tit. 15, § 664(2).

---

[3] "The family court shall have jurisdiction over all proceedings relating to the dissolution of civil unions."

In reviewing the applicability of the PKPA to the trial court's action, we are guided by the wording of the statute. "A principal rule of statutory interpretation is that courts will give statutory language its plain meaning." Davenport v. Little-Bowser, 269 Va. 546, 555, 611 S.E.2d 366, 371 (2005). At its threshold, the PKPA requires that a court making a child custody or visitation determination have "jurisdiction under the law of such State." 28 U.S.C. § 1738A(c)(1). The Vermont Supreme Court held that the Vermont court had jurisdiction under the laws of Vermont over the case initiated by Lisa's complaint. See Vt. Stat. Ann. tit. 15, § 1206. We are bound by that holding. See 28 U.S.C.§ 1738A(a) and (g).

Furthermore, Code § 28 U.S.C. 1738A(c)(2)(A)(ii) sanctions the Vermont court's exercise of jurisdiction. That subsection applies where a state "had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State." Id. The parties lived together in Vermont until September 2003, when Lisa and IMJ moved to Virginia. Janet continued to live in Vermont. Lisa commenced the Vermont proceeding to dissolve the civil union in November 2003, two months after Vermont ceased to be IMJ's "home state, due to her having been removed from that state" by Lisa.

Because the Vermont court acquired jurisdiction over the issues of custody and visitation, subsections (g) and (h) of the PKPA governed the trial court's ability to entertain Lisa's petition. Those subsections read:

> A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.

> A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination.

28 U.S.C. § 1738A(g) and (h).

The proceeding in the Vermont court was pending when Lisa filed her petition in the trial court. The Vermont court was then exercising its jurisdiction under Vermont law and consistently with the provisions of the PKPA. Thus, subsection (g) applied. The Vermont court, by virtue of its June 17, 2004 and July 19, 2004 orders, continued to exercise jurisdiction, giving application to subsection (h). Therefore, under a "plain meaning" statutory analysis, the trial court lacked authority to exercise jurisdiction based upon Lisa's custody and visitation action in Virginia or to modify the custody and visitation orders of the Vermont court.

## 2. *Lisa's Position*

Lisa posits three arguments why the PKPA did not preclude the trial court from exercising jurisdiction over her petition.

## a. Application of Vermont Law

First, Lisa argues that "to the extent the Vermont order constitutes a visitation determination, the Virginia court properly exercised jurisdiction because the Vermont order was not properly made." Specifically, Lisa contends the Vermont court could not grant "parent child contact" to Janet because it did not first determine that Janet was a parent. The Vermont Supreme Court rejected this argument. Miller-Jenkins, __ A.2d at __, 2006 Vt. LEXIS 159, at ** 55. Furthermore, Lisa makes this contention despite the fact that she alleged in her "Complaint for Civil Union Dissolution" that IMJ was "the biological or adoptive child[] of said civil union," and despite the fact that the Vermont court in its June 17, 2004 order specifically found that IMJ was "the minor child of the parties."

- 8 -

Lisa cites no authority, and we know of none, that permits us to rule that the supreme court of another state incorrectly interpreted its own law. The contrary is well established: "This Court has uniformly professed its disposition, in cases depending on the laws of a particular State, to adopt the construction which the Court of the State have given to those laws." Elmendorf v. Taylor, 23 U.S. (10 Wheat.) 152, 159 (1825).

b. Custody or Visitation Determination

Second, Lisa argues: "Even if the Vermont court properly made an initial custody determination within the meaning of the PKPA, the Virginia court properly exercised jurisdiction over the parentage action filed in Virginia." Specifically, Lisa contends the Virginia parentage action is not a custody or visitation determination per the PKPA. Yet, Lisa's petition to the trial court prays that she be adjudicated as having "sole parental rights" over IMJ and that Janet's claim to "parental rights" be adjudged "nugatory, void, illegal and/or unenforceable."

Lisa's complaint in the Vermont court asserted that IMJ was "the biological or adoptive" child of the civil union. She asked that court to award Janet "suitable parent/child contact" and to "award payment of suitable child support money." She thus submitted the determination of IMJ's parentage to the jurisdiction of the Vermont court. Its resolution of that issue has been affirmed by the Vermont Supreme Court and is final.

Whatever semantical machinations are involved, any common understanding of the term "parental rights" includes the right to custody, see Szemler v. Clements, 214 Va. 639, 643, 202 S.E.2d 880, 884 (1974) ("Parental rights of custody are founded upon the strong presumption that the best interests of the child will be served by placing it in the custody of its natural parents."), and visitation, see Peter N. Swisher, Lawrence D. Diehl & James R. Cottrell, Virginia Practice Series: Family Law: Theory, Practice, and Forms § 15.8 (2004 ed.) ("The right of a non-custodial parent to the company and society of his or her child is well established. Barring

gross unfitness which jeopardizes the well being of the child, visitation is a presumed

entitlement."). See also L.A.M. v. State, 547 P.2d 827 (Alaska 1976).[4] We therefore reject the

contention that Lisa's "parentage action" is not a custody or visitation determination embraced

by the PKPA.

### c. DOMA and the MAA

Third, Lisa argues: "Even if the Vermont court properly made an initial custody

determination within the meaning of the PKPA, and the Virginia order is somehow construed as

---

[4] While there is much discussion of parental rights in reported cases, few cases attempt to define those rights making discussion difficult. A careful review of the literature, including case law, treatise and law review, indicates that the following have been listed as "parental rights" protected to varying degrees by the Constitution:

> (1) Physical possession of the child which, in the case of a custodial parent includes the day-to-day care and companionship of the child. In the case of a non-custodial parent, possession is tantamount to the right to visitation.

> (2) The right to discipline the child, which includes the right to inculcate in the child the parent's moral and ethical standards.

> (3) The right to control and manage a minor child's earnings.

> (4) The right to control and manage a minor child's property.

> (5) The right to be supported by an adult child.

> (6) The right to have the child bear the parent's name.

> (7) The right to prevent an adoption of the child without the parents' consent.

L.A.M., 547 P.2d at 832 n.13.

- 10 -

a visitation or custody determination, the Virginia court properly exercised jurisdiction over the matter by virtue of the federal Defense of Marriage Act and the [Virginia] Marriage Affirmation Act."

DOMA reads:

> No state, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or right or claim arising from such relationship.

28 U.S.C. § 1738C.

Lisa argues that DOMA, enacted in 1996, effectively trumps the PKPA, enacted in 1980, thus enabling the trial court to exercise jurisdiction over Lisa's petition. We disagree.

Lisa cites no authority holding that either the plain wording of DOMA or its legislative history was intended to affect or partially repeal the PKPA. Therefore, any Congressional intent to repeal must be by implication. However, "[r]epeal by implication is not favored and the firmly established principle of law is that where two statutes are in apparent conflict, it is the duty of the court, if it be reasonably possible, to give to them such a construction as will give force and effect to each." Scott v. Lichford, 164 Va. 419, 422, 180 S.E. 393, 394 (1935).

We do not read the two statutes to conflict. They can be reconciled. In analyzing the statutes, we are mindful that "[t]he primary objective of statutory construction is to ascertain and give effect to legislative intent. Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction. Id." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998). As we have noted, "'Congress' chief aim in enacting the PKPA

was to extend the requirements of the Full Faith and Credit Clause to custody determinations.'"

Scott, 30 Va. App. at 187, 516 S.E.2d at 231 (quoting Thompson, 484 U.S. at 183).  DOMA

> has two primary purposes.  The first is to defend the institution of traditional heterosexual marriage.  The second is to protect the right of the States to formulate their own public policy regarding the legal recognition of same-sex unions, free from any federal constitutional implications that might attend the recognition by one State of the right for homosexual couples to acquire marriage licenses.

H.R. Rep. No. 104-664, at 2 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2905, 2906.  See also id. at 18, *reprinted in* 1996 U.S.C.C.A.N. at 2922 ("It is surely a legitimate purpose of government to take steps to protect the right of the people, acting through their state legislatures, to retain democratic control over the manner in which the States will define the institution of marriage. [DOMA] advances this most important government interest.").

Nothing in the wording or the legislative history of DOMA indicates that it was designed to affect the PKPA and related custody and visitation determinations.  Simply put, DOMA allows a state to deny recognition to same-sex marriage entered into in another state.  This case does not place before us the question whether Virginia recognizes the civil union entered into by the parties in Vermont.  Rather, the only question before us is whether, considering the PKPA, Virginia can deny full faith and credit to the orders of the Vermont court regarding IMJ's custody and visitation.  It cannot.  The law of Vermont granted the Vermont court jurisdiction to render those decisions.  By filing her complaint in Vermont, Lisa invoked the jurisdiction of the Vermont court.  She placed herself and the child before that court and laid before it the assertions and prayers that formed the bases of its orders.  By operation of the PKPA, her choice of forum precluded the courts of this Commonwealth from entertaining countervailing assertions and prayers.

Lisa argues that the MAA forbade the trial court to extend full faith and credit to the orders of the Vermont court. The MAA reads:

> A civil union, partnership contract or other arrangement between persons of the same sex purporting to bestow the privileges or obligations of marriage is prohibited. Any such civil union, partnership contract or other arrangement entered into by persons of the same sex in another state or jurisdiction shall be void in all respects in Virginia and any contractual rights created thereby shall be void and unenforceable.

Code § 20-45.3.

We need not, and do not, decide whether the MAA applies to this case. If it does, it is preempted by the PKPA. See, e.g., Meade, 812 F.2d at 1476 (PKPA preempts conflicting state law).

## B. The UCCJEA

Janet also contends the trial court erred in holding that the UCCJEA permitted it to exercise jurisdiction in this case. Having determined that the PKPA is the controlling law in this matter and that the PKPA preempts conflicting state law, we need not address that issue.

## III. CONCLUSION

We hold that the trial court erred in failing to recognize that the PKPA prevented its exercise of jurisdiction and required it to give full faith and credit to the custody and visitation orders of the Vermont court. By so holding, we do not address whether Virginia law recognizes or endorses same-sex unions entered into in another state or jurisdiction. We do not comment on the constitutionality, viability or breadth of—the UCCJEA and the MAA. We do not consider the merits of the rulings of the Vermont court. Those questions are not before us. The issue before us is the narrow one of jurisdiction. By filing her complaint in Vermont, Lisa invoked the jurisdiction of the courts of Vermont and subjected herself and the child to that jurisdiction. The PKPA forbids her prosecution of this action in the courts of this Commonwealth. Accordingly,

we vacate the orders of the trial court and remand this matter to the trial court with instruction to extend full faith and credit to the custody and visitation orders of the Vermont court.

<u>Vacated and remanded.</u>