66 So.3d 242 (2008)
A.K.
v.
N.B.
2070086.
Court of Civil Appeals of Alabama.
May 23, 2008.
Rehearing Denied December 19, 2008.
*243 Kimberly A. Clark, Dothan, for appellant.
L. Jan Laney, Dothan, for appellee.
PITTMAN, Judge.
A.K., a woman who has been adjudged by the Superior Court of Sutter County, California ("the California court"), to be a legal parent of A.R.B.K. ("the child"), a child born to N.B., appeals from an order of the Houston Juvenile Court ("the Alabama court") denying a motion that, in effect, sought relief from the Alabama court's previous judgment declaring that N.B. was the sole legal parent of the child and that A.K. was not entitled to visitation with the child. Because we conclude that the Alabama court lacked jurisdiction to enter its judgment regarding the child's parentage and the parties' visitation rights as to the child, we reverse the Alabama court's order denying A.K.'s motion and remand the cause with instructions to dismiss N.B.'s action in that court.
The record reveals that the child was conceived by means of artificial insemination of an egg furnished by N.B.; N.B. carried the child in utero to term, giving birth to the child in April 1999 in California. The child's original California birth certificate lists N.B. as the child's mother, but it does not indicate another parent. The record further reveals that N.B. and A.K. lived together in California in an arrangement that was described by A.K.'s counsel as having rendered the two of them "co-parents" with respect to the child; however, that arrangement apparently came to an end in March 2004, when the two parties ceased living together and N.B. and the child established a different California domicile.
California, like Alabama, has adopted a number of provisions of the 1973 Uniform Parentage Act ("UPA"), under which an interested party may seek a declaration that he or she is the father or the mother of a child. Compare Cal. Fam.Code § 7600 et seq., with Ala.Code 1975, § 26-17-1 et seq. Although Alabama appellate courts have yet to consider the question, in August 2005, the Supreme Court of California, construing that state's version of the UPA, held that a woman with whom the biological mother of a child has lived in a committed romantic relationship can, in law, also be deemed a "mother" of that *244 child by analogy to provisions permitting a presumed father of a child to be adjudicated a parent of that child. See Elisa B. v. Superior Court, 37 Cal.4th 108, 33 Cal. Rptr.3d 46, 117 P.3d 660 (2005) (disapproving, among other decisions to the contrary, West v. Superior Court, 59 Cal.App.4th 302, 69 Cal.Rptr.2d 160 (1997)).
In September 2005, approximately one month after Elisa B. was decided and one month after N.B. and the child had moved from California to Alabama, A.K., who has remained a California resident, filed in the California court a "Petition to Establish Parental Relationship" in which she described herself as a "presumed mother" of the child under § 7611(d) of the California Family Code, a portion of the UPA as adopted in California. In that petition, N.B. and the child were alleged to be California residents. A.K. sought, among other things, a declaration by the California court of her rights as to custody and visitation regarding the child.
Pursuant to the Parental Kidnaping Prevention Act ("PKPA"), a federal statute codified at 28 U.S.C. § 1738A, a state must enforce a "custody determination or visitation determination made ... by a court of another State" that is "consistent with" the PKPA. 28 U.S.C. § 1738A(a). Under the PKPA, "[a] child custody or visitation determination made by a court of a State" is to be deemed "consistent with" the PKPA if the court making the determination "has jurisdiction under the law of such State" and if the state in which the court sits "had been the child's home State within six months before the date of the commencement of the proceeding" when (a) "the child is absent from such State because of his removal or retention by a contestant or for other reasons," and (b) "a contestant[1] continues to live in such State." 28 U.S.C. § 1738A(c). In addition, the PKPA provides that a state court may not "exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination." 28 U.S.C. § 1738A(g). At the time A.K. filed her "Petition to Establish Parental Relationship" in the California court in September 2005, N.B. and the child had not resided in Alabama for a six-month period.
After the parentage and visitation proceeding was initiated in the California court, that court ordered the parties to engage in mediation of their dispute. It is not clear from the record whether mediation did not take place or whether mediation was unsuccessful; however, it does reflect that the parties and their attorneys appeared in the California court on August 15, 2006, for a contested hearing. After that hearing, the parties were directed to attend a mediation session on August 18, 2006, and to return to court later that day for a further hearing on, among other matters, child custody and visitation. The California court rendered a judgment on September 11, 2006, determining both A.K. and N.B. to be parents of the child, and that judgment was subsequently filed with the clerk of that court.
On September 6, 2006, after her appearance in the California court to contest A.K.'s petition (but five days before the California court had determined A.K. to be a parent of the child), N.B. filed a "Petition for Temporary Custody" in the Alabama court in which she alleged, in pertinent part, that she and the child had lived in *245 Alabama for more than a year, that the Alabama court had jurisdiction, and that Alabama "ha[d] a greater interest in the outcome of any proceeding having to do with the best interest of the child"; she further averred that A.K. had engaged in "constant name calling" that had emotionally scarred the child and that A.K. intended to kidnap the child and return her to California. The Alabama court entered an ex parte order on September 8, 2006, granting N.B. sole custody of the child pending further orders and enjoining the child's removal from Alabama. The Alabama court subsequently appointed a guardian ad litem to represent the interests of the child in N.B.'s action. On November 14, 2006, the Alabama court held a hearing on N.B.'s petition at which only counsel for N.B. and the child's guardian ad litem appeared. After that hearing, the Alabama court entered a judgment on November 16, 2006, determining that the child had already moved to Alabama by the time A.K.'s petition was filed in the California court and that the California court "ha[d] no subject matter jurisdiction in this matter ab initio"; the Alabama court also ruled that it had jurisdiction over matters regarding the child's custody and visitation, opined that N.B. was the sole parent of the child, and concluded that A.K. had no visitation rights as to the child. The record does not reflect, however, that A.K. was given notice of N.B.'s filings or that the Alabama court notified A.K. of any hearings giving rise to its September 8, 2006, order or its November 16 judgment.
Despite the Alabama court's denial of the existence of jurisdiction in the California court, that court continued to determine matters arising from A.K.'s parentage and visitation petition. After a December 2006 hearing, the California court ordered that the child's birth certificate be amended to reflect A.K.'s status as a parent of the child. On February 1, 2007, following a hearing on January 12, 2007, the California court entered an order determining that A.K. would have certain periods of visitation with the child in February and March 2007, after which the matter would again be reviewed; that order further stated that the California court "ha[d] jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act" ("UCCJEA"), which is codified in California at Cal. Fam.Code, § 3400 et seq., and that N.B., as the responding party, "was given notice and an opportunity to be heard, as provided by the laws of the State of California."
In April 2007, A.K. appeared for the first time in the Alabama court and filed what she labeled a "Motion to Dismiss" the action brought by N.B.[2] A.K. contended in her motion that the Alabama court should, as a procedural matter, dismiss or stay all proceedings in the Alabama court because N.B. had failed to provide information regarding, among other things, the child's recent residences that is generally *246 required under Alabama's version of the UCCJEA, Ala.Code 1975, § 30-3B-101 et seq., to be provided in custody proceedings (see Ala.Code 1975, § 30-3B-209). Substantively, A.K. contended that under the PKPA and the UCCJEA, only the California court could properly exercise jurisdiction over the matter of visitation because, A.K. said, the California court had entered a proper visitation order and had continuing jurisdiction to modify that order. In response to A.K.'s motion, N.B. filed an objection in which she alleged that the California court had lacked subject-matter jurisdiction to determine questions of visitation and that A.K.'s petition to determine parentage and visitation had not afforded her "reasonable notice" of what was being sought.
After a hearing, the Alabama court entered a judgment denying A.K.'s motion. The Alabama court opined in its judgment, among other things, that the proceedings in the California court were not "consistent with" the PKPA and that it was not required, under the UCCJEA, to defer to the California court. A.K. timely appealed to this court from that judgment.
On appeal, A.K. again contends that the Alabama court's exercise of jurisdiction was erroneous in light of, among other things, the provisions of the PKPA. Based upon the record in this case, and the provisions of the PKPA, we must agree with A.K. At the time A.K. filed her "Petition to Establish Parental Relationship" in the California court in September 2005, which also sought a judicial determination as to her rights to visitation with the child, N.B. and the child had left California but had not yet resided in Alabama for six months, while A.K. remained in California. Under the PKPA, as well as California's version of the UCCJEA, the California court had jurisdiction to determine A.K.'s visitation rights as to the child because California "had been the child's home State within six months before the date of the commencement of the proceeding," the child was "absent from [California] because of [her] removal" to Alabama by N.B., and A.K. "continue[d] to live in" California. See 28 U.S.C. § 1738A(c)(1) and (c)(2)(A); accord Cal. Fam.Code § 3421(a)(1). Under both California's version of the UCCJEA and that state's caselaw, personal jurisdiction over a party is not necessary to make a "child custody determination," a term that encompasses a determination of visitation rights. Cal. Fam.Code §§ 3402(c) & 3421(c); In re Marriage of Torres, 62 Cal.App.4th 1367, 1378, 73 Cal.Rptr.2d 344, 352 (1998) ("The requirements of due process of law are met in a child custody proceeding when, in a court having subject matter jurisdiction over the dispute, the out-of-state parent is given notice and an opportunity to be heard."). Furthermore, the California court has expressly determined that it has jurisdiction to enter orders regarding A.K.'s visitation rights.[3]
N.B. attempts to justify the Alabama court's exercise of jurisdiction on the basis that Alabama's version of the UPA allows a party to seek an adjudication of paternity in the county in which the child resides (Ala.Code 1975, § 26-17-10(f)); a paternity action, N.B. appears to contend, is not within the scope of the PKPA. Although an interested party would have standing under the UPA to seek a judgment regarding *247 the existence or nonexistence of a mother-and-child relationship, see Ala. Code 1975, § 26-17-18, there are two flaws in N.B.'s argument:
(1) A.K. is not a resident of Alabama who may properly be deemed to have submitted to the jurisdiction of its courts under Ala.Code 1975, § 26-17-10(b), nor does she fall within the provision in Alabama's UPA under which a nonresident "who has [had] sexual intercourse in this state" is deemed to have submitted to the jurisdiction of Alabama courts "as to an action brought ... with respect to a child who may have been conceived by that act of sexual intercourse." Ala.Code 1975, § 26-17-10(c) (emphasis added).
(2) Even if the Alabama court could properly exercise personal jurisdiction over A.K. as to parentage issues, it would now be bound, under federal constitutional and statutory law, to give full faith and credit to the judgment of the California court rendered on September 11, 2006, that A.K. is a parent of the child. See Package Express Ctr., Inc. v. Maund, 957 So.2d 1137, 1140 (Ala.Civ.App.2006) (noting that Alabama courts are required to give a judgment entitled to full faith and credit at least the res judicata effect accorded in the rendering court's jurisdiction so long as jurisdiction was not lacking in the rendering court); In re Margarita D., 72 Cal.App.4th 1288, 1296, 85 Cal.Rptr.2d 713, 718 (1999) (California judgment declaring existence of parent-and-child relationship held determinative for all purposes and immune from collateral attack through the use of contrary blood-test evidence).[4]
Finally, even if a UPA action were otherwise proper, the PKPA would prevent the Alabama court from addressing "the custody of the child" under Ala.Code 1975, § 26-17-14(d), such that the primary issue of A.K.'s right to visitation with the child would not be subject to reexamination in the Alabama court. See 28 U.S.C. § 1738A(g) (when a child-visitation proceeding is pending in a court of one state having jurisdiction to make a visitation determination, another state's courts may not make a custody or visitation determination during the pendency of that proceeding).
N.B. also contends that the PKPA does not mandate that the various orders of the California court be accorded full faith and credit. However, as we have twice noted in this opinion, the PKPA does not merely apply to situations in which the court of a child's home state has entered an order or judgment adjudicating a party's visitation rights; rather, it bars courts in other states from exercising jurisdiction to make a custody or visitation determination during the pendency of proceedings in the child's home state. In this case, A.K. filed her petition in the California court before the Alabama court could have acquired home-state jurisdiction; therefore, as a matter of federal law, the Alabama court could not properly determine visitation rights as to the child.
Our reasoning parallels that of the Virginia Court of Appeals in Miller-Jenkins v. Miller-Jenkins, 49 Va.App. 88, 637 S.E.2d 330 (2006), cert. denied, 552 U.S. 1166, 128 S.Ct. 1127, 169 L.Ed.2d 950 (2008). In Miller-Jenkins, a proceeding was filed in a Vermont trial court in November 2003 by the natural mother of a child conceived by artificial insemination in which the natural mother sought the judicial *248 dissolution of a "civil union" involving the natural mother and another woman with whom the natural mother had lived in Vermont between August 2002 and September 2003. The Vermont action also involved a request for a determination of the parties' rights concerning custody and visitation with respect to the child. However, the natural mother subsequently filed an action in a Virginia trial court in which she sought a declaration of sole parentage and an adjudication that her former partner had no parental rights; the Virginia trial court granted that requested relief.
The Virginia Court of Appeals reversed that judgment on the basis that the PKPA barred the Virginia trial court from exercising jurisdiction to determine custody and visitation rights as to the child. Noting that the Vermont action had been filed within six months after the departure of the natural mother and the child from Vermont, that that action had placed in issue the parties' rights in and to the child with respect to custody and visitation, and that the Vermont court had determined that jurisdiction lay in Vermont, the Virginia appellate court concluded that subsections (g) and (h) of the PKPA barred the Virginia trial court from entertaining the natural mother's petition to declare her the child's sole parent. 49 Va.App. at 96-98, 637 S.E.2d at 334-35. The Virginia appellate court concluded:
"We hold that the [Virginia] trial court erred in failing to recognize that the PKPA prevented its exercise of jurisdiction and required it to give full faith and credit to the custody and visitation orders of the Vermont court. By so holding, we do not address whether Virginia law recognizes or endorses same-sex unions entered into in another state or jurisdiction. We do not comment on the constitutionality, viability or breadth of the UCCJEA and [Virginia's Marriage Affirmation Act]. We do not consider the merits of the rulings of the Vermont court. Those questions are not before us. The issue before us is the narrow one of jurisdiction. By filing her complaint in Vermont, [the natural mother] invoked the jurisdiction of the courts of Vermont and subjected herself and the child to that jurisdiction. The PKPA forbids her prosecution of this action in the courts of this Commonwealth. Accordingly, we vacate the orders of the [Virginia] trial court and remand this matter to the trial court with instruction to extend full faith and credit to the custody and visitation orders of the Vermont court."
49 Va.App. at 103, 637 S.E.2d at 337-38.
Confronted with the priority of the California court's jurisdiction in this case, which stems from A.K.'s initiation of parentage and visitation proceedings in that court before Alabama became the child's home state, we likewise hold that the PKPA preempted the Alabama court's jurisdiction to enter a judgment touching and concerning A.K.'s visitation rights with respect to the child. The Alabama court's November 16, 2006, judgment is reversed, and the cause is remanded with instructions to dismiss N.B.'s action.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
BRYAN, J., dissents, without writing.
NOTES
[1] The PKPA defines a "contestant" as "a person, including a parent or grandparent, who claims a right to custody or visitation of a child." 28 U.S.C. § 1738A(b)(2).
[2] Because the Alabama court had previously entered a judgment in November 2006 determining the merits of the controversy and granting the relief requested by N.B. in her September 2006 petition, A.K.'s motion effectively sought relief from that judgment under Rule 60(b)(4) and 60(b)(6), Ala. R. Civ. P. See Ex parte Hartford Ins. Co., 394 So.2d 933, 935 (Ala. 1981) (stating that "under the [Alabama] Rules of Civil Procedure, nomenclature of a motion is not controlling" and holding that a "motion to reinstate" an action filed nine months after a final judgment had been entered was properly deemed a motion for relief from the judgment under Rule 60(b)). We note that an order denying relief under Rule 60(b) is an appealable final judgment. See Williams v. Williams, 910 So.2d 1284, 1286 (Ala.Civ.App.2005).
[3] Whether that determination was made over N.B.'s express objection or not is of no import. See Package Express Ctr., Inc. v. Maund, 957 So.2d 1137, 1142 (Ala.Civ.App.2006) (when a party appears in an action, the judgment in that action has res judicata effect as to the issue of personal jurisdiction regardless of whether that party actually litigated the question or merely permitted it to pass without objection).
[4] Although N.B. asserts that a claim under the UPA by the child would not be barred by the doctrine of res judicata, the record does not reflect that the child has asserted any such claim.